No. 20-10059

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

GEORGE ANIBOWEI,
*Plaintiff - Appellant*

v.

MARK A. MORGAN, Acting Commissioner of U.S. Customs and Border
Protection, in his official capacity; WILLIAM P. BARR, U.S. ATTORNEY
GENERAL; CHAD F. WOLF, ACTING SECRETARY, U.S. DEPARTMENT
OF HOMELAND SECURITY; MATTHEW T. ALBENCE, Acting Director of
U.S. Immigration and Customs Enforcement, in his official capacity; DAVID
P. PEKOSKE, Administrator of the Transportation Security Administration,
in his official capacity; UNITED STATES DEPARTMENT OF HOMELAND
SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION;
UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT;
TRANSPORTATION SECURITY ADMINISTRATION,
*Defendants - Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

---

### BRIEF OF APPELLANT

---

Mimi Marziani
Peter Steffensen
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Dr.
Austin, TX 78741
(512) 474-5073
(512) 474-0726 (fax)
mimi@texascivilrightsproject.org

Hani Mirza
TEXAS CIVIL RIGHTS PROJECT
1412 Main St., Suite 608
Dallas, Texas 75202
(972) 333-9200 ext. 171
(972) 957-7867 (fax)
hani@texascivilrightsproject.org

Andrew T. Tutt
R. Stanton Jones
Stephen K. Wirth
Samuel F. Callahan
Graham W. White
Jayce Lane Born
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
andrew.tutt@arnoldporter.com

*Counsel for Appellant George Anibowei*

# CERTIFICATE OF INTERESTED PERSONS

*George Anibowei v. Chad Wolf et al.*, No. 20-10059

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

## <u>PLAINTIFF-APPELLANT</u>

The Appellant is George Anibowei. He is a natural person and the named plaintiff in *Anibowei v. Lynch*, No. 3:16-cv-03495-D (N.D. Tex.)

**ATTORNEYS FOR PLAINTIFF-APPELLANT:**

Mimi Marziani
Peter Steffensen
TEXAS CIVIL RIGHTS
PROJECT
1405 Montopolis Dr.
Austin, TX 78741
(512) 474-5073
(512) 474-0726 (fax)
mimi@texascivilrightsproject.org

Hani Mirza
TEXAS CIVIL RIGHTS
PROJECT
1412 Main St., Suite 608
Dallas, Texas 75202
(972) 333-9200 ext. 171
(972) 957-7867 (fax)
hani@texascivilrightsproject.org

Andrew T. Tutt
R. Stanton Jones
Stephen K. Wirth
Samuel F. Callahan
Graham W. White
Jayce Lane Born
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
andrew.tutt@arnoldporter.com

**FORMER ATTORNEYS FOR PLAINTIFF-APPELLANT:**

Natalia Cornelio
TEXAS CIVIL RIGHTS
PROJECT
405 Main Street, Suite 716
Houston, Texas 77002
(832) 767-3650
(832) 554-9981 (fax)

Emily Rebecca Chertoff
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000

## DEFENDANTS-APPELLEES

The Appellees are Chad F. Wolf, acting U.S. Secretary of Homeland Security, in his official capacity; Mark A. Morgan, acting Commissioner of U.S. Customs and Border Protection, in his official capacity; Matthew T. Albence, acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; David P. Pekoske, Administrator of the Transportation Security Administration, in his official capacity; William P. Barr, Attorney General of the United States, in his official capacity; and the U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Immigration and Customs Enforcement ("ICE"); and the Transportation Security Administration ("TSA").  All of the Defendants are U.S. government agencies or the heads of those agencies sued in their official capacities.

**ATTORNEYS FOR DEFENDANTS-APPELLANT:**

ERIN NEALY COX
United States Attorney

Sarah E. Delaney
Assistant United States Attorney
Arizona Bar No. 031722 1100
Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8730
Facsimile: 214-659-8807
sarah.delaney@usdoj.gov

/s/ *Andrew T. Tutt*

Andrew T. Tutt
Attorney of record for Appellant
George Anibowei

## STATEMENT REGARDING ORAL ARGUMENT

This case raises multiple issues of first impression in this Court, and Appellant respectfully submits that oral argument would aid the Court's disposition of this case.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .........................................i

STATEMENT REGARDING ORAL ARGUMENT ..............................iv

TABLE OF CONTENTS ......................................................... v

TABLE OF AUTHORITIES.................................................viii

INTRODUCTION.................................................................1

JURISDICTIONAL STATEMENT ........................................6

STATEMENT OF THE ISSUES................................................6

STATEMENT OF THE CASE ................................................7

I.    LEGAL BACKGROUND................................................7

    A.    The Fourth Amendment Presumptively Requires
       Warrants for All Searches........................................7

    B.    The Supreme Court In Two Recent Cases Has Declined to
       Extend Traditional Warrant Exceptions to Cell Phones .....10

    C.    The "Border Search" Exception Permits Warrantless
       Searches to Interdict Contraband ........................................12

    D.    Courts Are Divided Over the Application of the Border
       Search Exception to Cell Phones .........................................15

    E.    This Circuit Has Not Yet Ruled On Whether the Border
       Search Exception Extends to Searches of Cell Phone Data
       at the Border ......................................................................17

II.   FACTUAL BACKGROUND.........................................18

    A.    ICE's and CBP's Policies Authorizing Border Agents to
       Conduct Warrantless Cell Phone Searches at the Border ...18

B.  Border Agents' Unconstitutional Searches of Mr. Anibowei's Cell Phone Data and Their Continued Unlawful Retention of That Data .........................................20

III.  PROCEDURAL BACKGROUND ................................................23

SUMMARY OF ARGUMENT ................................................26

STANDARD OF REVIEW....................................................31

ARGUMENT ........................................................................32

I.  ICE'S AND CBP'S POLICIES VIOLATE THE FOURTH AMENDMENT ...................................................................32

A.  Cell Phone Searches Represent a New Technological Context and Thus The Court Must Determine Whether the Border Search Exception "Extends" to Them ...............35

B.  Neither of the Justifications For the Border Search Exception Support Extending the Exception to Cell Phones ............................................................................40

1.  Individuals' Reduced Privacy Interests at the Border Are Outweighed by the Unmatched Privacy and Expressive Interests in the Data Stored on Cell Phones ......................................................................40

2.  The Government's Interest In Preventing Contraband from Crossing the Border Does Not Justify Warrantless Cell Phone Searches ...................45

C.  Additional Considerations Also Favor Preserving the Warrant Requirement for Cell Phone Searches at the Border.............................................................................50

D.  This Court Should Follow the Logic, Though Not the Exact Holdings, of the Ninth Circuit in *Cano* and the Fourth Circuit in *Aigbekaen*............................................54

II.    THE COURT SHOULD DIRECT THE DISTRICT COURT TO
ENTER SUMMARY JUDGMENT FOR MR. ANIBOWEI ........... 57

III.   AT MINIMUM, THE COURT SHOULD ORDER THE
DISTRICT COURT TO ENTER A PRELIMINARY
INJUNCTION AGAINST ICE AND CBP ................................... 60

    A.    Mr. Anibowei Is Likely to Suffer Irreparable Harm in the
Absence of Preliminary Relief ............................................... 61

    B.    The Balance of Equities and Public Interest Favor a
Preliminary Injunction ....................................................... 62

CONCLUSION ....................................................................... 62

CERTIFICATE OF SERVICE ................................................. 64

CERTIFICATE OF COMPLIANCE ........................................ 65

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s):**

*Alasaad v. Nielsen,*
   419 F. Supp. 3d 142 (D. Mass. 2019)................................... 17

*Alasaad v. Nielsen,*
   No. 17-CV-11730-DJC, 2018 WL 2170323 (D. Mass. May
   9, 2018)............................................................................. 16

*Ali v. Quarterman,*
   607 F.3d 1046 (5th Cir. 2010) ........................................... 57

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)........................................................... 31

*Arizona v. Gant,*
   556 U.S. 332 (2009)................................................ 7, 8, 32

*Awad v. Ziriax,*
   670 F.3d 1111 (10th Cir. 2012) ......................................... 62

*Boyd v. United States,*
   116 U.S. 616 (1886)........................................................... 13

*Byrum v. Landreth,*
   566 F.3d 442 (5th Cir. 2009) ........................................ 6, 59

*Cady v. Dombrowski,*
   413 U.S. 433 (1973)............................................................. 8

*California v. Acevedo,*
   500 U.S. 565 (1991)............................................................. 8

*Cardoni v. Prosperity Bank,*
   805 F.3d 573 (5th Cir. 2015)............................................. 30

*Carpenter v. United States,*
   138 S. Ct. 2206 (2018)............................................... passim

*Carroll v. United States,*
   267 U.S. 132 (1925) ............................................................... 13

*Cibolo Waste, Inc. v. City of San Antonio,*
   718 F.3d 469 (5th Cir. 2013) ............................................... 31

*City of Ontario, Cal. v. Quon,*
   560 U.S. 746 (2010) ............................................................... 44

*Crispin v. Christian Audigier, Inc.,*
   717 F. Supp. 2d 965 (C.D. Cal. 2010) .............................. 42

*Elrod v. Burns,*
   427 U.S. 347 (1976) ............................................................... 61

*Escobar v. Montee,*
   895 F.3d 387 (5th Cir. 2018) ....................................... 57, 58

*Illusions—Dallas Private Club, Inc. v. Steen,*
   482 F.3d 299 (5th Cir. 2007) ............................................... 31

*In re Application of U.S. for an Order Directing a Provider of
   Elec. Commc'n Serv. to Disclose Records to Gov't,*
   620 F.3d 304 (3d Cir. 2010) ............................................... 39

*In re Application of U.S. for Historical Cell Site Data,*
   724 F.3d 600 (5th Cir. 2013) ............................................... 39

*Jackson Women's Health Org. v. Currier,*
   760 F.3d 448 (5th Cir. 2014) ............................................... 62

*Janvey v. Alguire,*
   647 F.3d 585 (5th Cir. 2011) ............................................... 32

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak
   Dan Gas Bumi Negara,*
   335 F.3d 357 (5th Cir. 2003) ....................................... 31, 32

*Katz v. United States,*
   389 U.S. 347 (1967) ......................................................... 8, 35

*KH Outdoor, LLC v. City of Trussville*,
  458 F.3d 1261 (11th Cir. 2006) ......................................................... 62

*Kyllo v. United States*,
  533 U.S. 27 (2001) ............................................................................ 35

*Legend Night Club v. Miller*,
  637 F.3d 291 (4th Cir. 2011) ............................................................ 62

*Magnolia Marine Transp. Co. v. Laplace Towing Corp.*,
  964 F.2d 1571 (5th Cir.1992) ........................................................... 57

*Mincey v. Arizona*,
  437 U.S. 385 (1978) ............................................................................ 8

*Missouri v. McNeely*,
  569 U.S. 141 (2013) .......................................................................... 53

*Nat'l Treasury Emps. Union v. Von Raab*,
  489 U.S. 656 (1989) .......................................................................... 51

*New York Life Ins. Co. v. Gillispie*,
  203 F.3d 384 (5th Cir. 2000) ............................................................ 32

*New York v. P.J. Video, Inc.*,
  475 U.S. 868 (1986) ................................................................... 29, 43

*Nken v. Holder*,
  556 U.S. 418 (2009) .......................................................................... 60

*Reno v. Am. Civil Liberties Union*,
  521 U.S. 844 (1997) .......................................................................... 49

*Riley v. California*,
  573 U.S. 373 (2014) .................................................................. passim

*Roaden v. Kentucky*,
  413 U.S. 496 (1973) ............................................................................ 9

*R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist., No. 2149*,
  894 F. Supp. 2d 1128 (D. Minn. 2012) ............................................. 42

*Salge v. Edna Indep. Sch. Dist.*,
  411 F.3d 178 (5th Cir. 2005)...........................................................31

*Sibron v. New York*,
  392 U.S. 40 (1968).................................................................8, 9

*Smith v. Maryland*,
  442 U.S. 735 (1979)....................................................................36

*Stanford v. Texas*,
  379 U.S. 476 (1965)....................................................................43

*Statharos v. N.Y. Taxi & Limousine Comm'n*,
  198 F.3d 317 (2d Cir. 1999) ..........................................................61

*Steagald v. U.S.*,
  451 U.S. 204 (1981)....................................................................53

*Texans for Free Enter. v. Texas Ethics Comm'n*,
  732 F.3d 535 (5th Cir. 2013)..........................................................60

*United States v Aigbekaen*,
  943 F.3d 713 (4th Cir. 2019)..................................2, 16, 32, 33, 51, 54

*United States v. Cano*,
  934 F.3d 1002 (9th Cir. 2019)................................................. passim

*United States v. Carpenter*,
  819 F.3d 880 (6th Cir. 2016)..........................................................39

*United States v. Cotterman*,
  709 F.3d 952 (9th Cir. 2013)......................................................17, 47

*United States v. Davis*,
  785 F.3d 498 (11th Cir. 2015).........................................................39

*United States v. Flores-Montano*,
  541 U.S. 149 (2004).............................................................12, 14, 15

*United States v. Graham*,
  824 F.3d 421 (4th Cir. 2016)..........................................................39

*United States v. Kolsuz,*
    890 F.3d 133 (4th Cir. 2018)............................................. 16, 17, 51, 54

*United States v. Lefkowitz,*
    285 U.S. 452 (1932).................................................................... 51, 52

*United States v. Miller,*
    425 U.S. 435 (1976).......................................................................... 36

*United States v. Molina-Isidoro,*
    884 F.3d 287 (5th Cir. 2018)....................................... 2, 12, 14, 17, 18

*United States v. Montoya de Hernandez,*
    473 U.S. 531 (1985)............................................. 14, 15, 33, 38, 40, 45

*United States v. Ramsey,*
    431 U.S. 606 (1977)............................................................... 13, 14, 15

*United States v. Robinson,*
    414 U.S. 218 (1973)...................................................................... 9, 36

*United States v. Thirty-Seven (37) Photographs,*
    402 U.S. 363 (1971)...................................................................... 13, 14

*United States v. Touset,*
    890 F.3d 1227 (11th Cir. 2018).......................................................... 15

*United States v. U.S. Coin & Currency,*
    401 U.S. 715 (1971)........................................................................... 62

*United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.*
    (*Keith*),
    407 U.S. 297 (1972).................................................................... 49, 50

*United States v. Vergara,*
    884 F.3d 1309 (11th Cir. 2018).......................................................... 15

*United States v. Warshak,*
    631 F.3d 266 (6th Cir. 2010).............................................................. 42

*United States v. Wurie,*
    728 F.3d 1 (1st Cir. 2013) ................................................................. 39

*Vernonia School Dist. 47J v. Acton*,
  515 U.S. 646 (1995) ............................................................... 8

*Weems v. United States*,
  217 U.S. 349 (1910) ............................................................. 35

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................. 60

*Zurcher v. Stanford Daily*,
  436 U.S. 547 (1978) ...................................................... 29, 43

## Statutes

19 U.S.C. § 482(a) ................................................................ 13

28 U.S.C. § 1292(a)(1) ............................................................ 6

28 U.S.C. § 1331 ................................................................... 6

Act of July 31, 1789, 1 Stat. 29 ......................................... 12, 13

Act of July 31, 1789, 1 Stat. 43 ............................................ 13

## Rules

Fed. R. Civ. P. 56(c) ............................................................ 31

Fed. R. Crim. P. 4.1 ............................................................. 53

## Other Authorities

Brief for Respondent State of California, *Riley v. California*,
  573 U.S. 373 (2014) (No. 13-132), 2014 WL 1348466 ......................... 9

CBP Directive No. 3340-049A (Jan. 4, 2018) ................................. 18, 19

Charles A. Wright & Arthur R. Miller, 11A Fed. Prac. &
  Proc. Civ. § 2948.1 (3d ed. 2020) ......................................... 61

Daniel J. Solove, *The First Amendment as Criminal
  Procedure*, 82 N.Y.U. L. Rev. 112 (2007) .................................. 43

Orin S. Kerr, *The Fourth Amendment and the Global Internet*, 67 Stan. L. Rev. 285 (2015)............................................. 44, 49

Wayne R. LaFave, *Being Frank About the Fourth: On Allen's "Process of 'Factualization' in the Search and Seizure Cases"*, 85 Mich. L. Rev. 427 (1986) ................................................... 55

2 Wayne R. LaFave et al., *Search & Seizure* § 4.3(b) (5th ed. 2018).......................................................................................... 5, 13

## INTRODUCTION

This case illustrates the painful personal and professional costs inflicted on innocent people every day by warrantless cell phone searches at the border.  The facts are undisputed.  Plaintiff-Appellant George Anibowei is an attorney in Dallas with clients adverse to the government in legal proceedings.  Three years ago, on October 10, 2016, border agents at the Dallas-Fort Worth airport seized Mr. Anibowei's cell phone as he returned home from a trip to Canada.  ROA.562, ¶¶ 98-100.  Acting without a warrant, the agents searched the cell phone and copied the data on it.  ROA.544, ¶ 16; ROA.562, ¶¶ 100-02.  The government admits "that information from Anibowei's cell phone was downloaded and eventually retained as a result of [that] advanced search." ROA.906, ¶ 4.  In the three years since that initial search, border agents have searched Mr. Anibowei's cell phone without a warrant four more times.  ROA.544, ¶ 17.  These searches are humiliating and degrading.  They have exposed attorney-client privileged information to government agents.  They have turned up nothing.  And because they all were executed without warrants, they violated the Fourth Amendment.

Border agents have always had authority to warrantlessly search physical containers to prevent contraband from crossing the border. But this Court has *never* extended this "border search" exception to searches of the data on cell phones. In fact, when this Court recently confronted the precise question whether the border search exception permits warrantless searches of cell phone data at the border, it expressly left it open. *United States v. Molina-Isidoro*, 884 F.3d 287, 290 (5th Cir. 2018). This case calls on the Court now to reach and resolve it. The Court should do so, and hold that warrantless cell phone searches at the border violate the Fourth Amendment unless they are supported by a case-specific exception to the warrant requirement, such as exigent circumstances.

The Fourth Amendment's narrow border search exception does not extend to cell phones. The Supreme Court's decision in *Riley v. California*, 573 U.S. 373 (2014), and the Fourth and Ninth Circuit's recent decisions in *United States v Aigbekaen*, 943 F.3d 713, 721-23 (4th Cir. 2019), and *United States v. Cano*, 934 F.3d 1002, 1020-21 (9th Cir. 2019), all make that clear. Smartphones are so different from other effects routinely carried on the person that, as the Supreme Court held in *Riley*, courts cannot reflexively "extend" traditional warrant

exceptions to them. Cell phone searches are dragnet searches of a person's entire life—they can lay bare every private communication, every photo, and (due to GPS tracking data) every place he has recently been, in a single search. These searches "expose to the government far *more* than the most exhaustive search of a house … unless the phone is [in the house]," *Riley*, 573 U.S. at 396-97, and are as different from historical border searches of physical containers as "a ride on horseback" is from "a flight to the moon," *id.* at 393.

This case proves—better than perhaps any case could—why the bright line warrant requirement is essential and why no lesser standard, like reasonable suspicion, will work in practice. Mr. Anibowei explained in his motion for preliminary injunction or summary judgment that border agents not only searched his cell phone without a warrant, but they also did so *without suspicion*. *See* ROA.651-654, 673. The district court agreed (and the government concedes) that the searches were warrantless. ROA.877-878, 974:12-13, 910, ¶¶ 16-17. But the district court declined to address Mr. Anibowei's argument that the suspicionless searches here violated Mr. Anibowei's Fourth Amendment rights because in the court's view, there was not yet enough evidence in the record to

establish that they were in fact suspicionless.[1]  *See* ROA.882.  The district court erred on that point.   Mr. Anibowei filed a verified complaint averring that the searches were suspicionless, the government has never disputed that fact, *see* ROA.741-778; *see also* ROA.910, and in any event the relief Mr. Anibowei seeks is *prospective*, meaning the correct question is whether there is a reasonable likelihood government agents will search his cell phone again in the future without suspicion, not whether every one of the earlier searches was in fact suspicionless.  *See* ROA.958-59, 961, 990.

---

[1] At oral argument the district court made clear its view that if "reasonable suspicion is the standard the record is not developed enough … to decide that question." ROA.986; *see* ROA.974.  Counsel for Mr. Anibowei argued vigorously that the record was sufficient to decide the question. ROA.954, 957, 959-61, 989-90.  In its opinion, the district court wrote that "at oral argument Anibowei's counsel eschewed reliance on a reasonable suspicion-based argument." ROA.880.  That is belied by the argument transcript. At oral argument, counsel for Mr. Anibowei stated "[o]ur primary position is that a warrant is required for these searches," ROA.954, but "if reasonable suspicion is what the court believes the correct answer to be, we would not reject reasonable suspicion as the standard," ROA.957; "we believe that you can rule on reasonable suspicion," ROA.959; "we think the record is sufficient across the board for the court to rule" because "[w]e filed a verified complaint attesting that Mr. Anibowei's cell phone was repeatedly searched without a warrant or reasonable suspicion," ROA.989.

But the district court's decision starkly reveals why warrants are so important. When innocent people are subjected to sweeping unconstitutional border searches that turn up no evidence of wrongdoing, they should not have to litigate for years, depose border agents, and hold a trial all to prove a negative: that the government lacked the requisite suspicion necessary to search them. Avoiding that sort of protracted litigation, which effectively licenses government lawbreaking, is one of the reasons why the Constitution has a warrant requirement.[2] *See, e.g.*, 2 Wayne R. LaFave et al., *Search & Seizure* § 4.3(b) (5th ed. 2018) ("[O]ne important function of the warrant requirement is to facilitate review of probable cause and avoid justification for a search or an arrest by facts or evidence turned up in the course of their execution." (internal marks omitted)).

The searches in this case were carried out pursuant to ICE and CBP policies that purport to authorize border agents to warrantlessly search

---

[2] When Mr. Anibowei sought to begin discovery during the pendency of this appeal—so that he might conclusively prove that no suspicion supported the searches here—the district court instead granted the government a stay of the case over Mr. Anibowei's strenuous opposition. The district court case is now frozen, yet again, further delaying Mr. Anibowei's opportunity to vindicate his claims. ROA.1071.

electronic devices at the border. Those policies violate the Fourth Amendment. The Court should reverse and remand, and direct the district court to vacate ICE's and CBP's unconstitutional policies and destroy Mr. Anibowei's data. At minimum, it should reverse and direct the district court to preliminarily enjoin ICE and CBP from warrantlessly searching Mr. Anibowei's cell phone and protect Mr. Anibowei's data from being accessed or used pending final judgment in this case.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction to review the district court's order denying Mr. Anibowei's motion for a preliminary injunction under 28 U.S.C. § 1292(a)(1). This Court has jurisdiction to review the district court's order denying Mr. Anibowei's motion for summary judgment under its pendent appellate jurisdiction. *See Byrum v. Landreth*, 566 F.3d 442, 449-51 (5th Cir. 2009).

## STATEMENT OF THE ISSUES

1. Whether, absent exigent circumstances or another case-specific exception, searching a cell phone without a warrant violates the Fourth Amendment, even if the search is conducted at the U.S. border.

2.  Whether the Court should reverse the district court's decision declining to grant Mr. Anibowei summary judgment vacating ICE's and CBP's policies authorizing warrantless cell phone searches at the border and ordering the government to destroy the data it seized from him as a result of an unconstitutional cell phone search.

3.  Alternatively, whether the Court should reverse the district court's decision declining to grant Mr. Anibowei a preliminary injunction against further searches of his cell phone and restricting access to and use of his data pending final judgment in this case.

## STATEMENT OF THE CASE

## I.   LEGAL BACKGROUND

### A.   The Fourth Amendment Presumptively Requires Warrants for All Searches

The Fourth Amendment presumptively requires government agents to obtain a warrant before conducting a search.  "[E]very case addressing the reasonableness of a warrantless search [begins] with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338 (2009)

(quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)); *see also Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995) ("Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, this Court has said that reasonableness generally requires the obtaining of a judicial warrant."). Those exceptions include exigent circumstances, *Mincey v. Arizona*, 437 U.S. 385, 392 (1978), community caretaking, *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973), searches incident to arrest, *Riley v. California*, 573 U.S. 373, 386 (2014), and vehicle searches, *California v. Acevedo*, 500 U.S. 565, 574 (1991).

No exception applies to every set of circumstances. Instead, the Supreme Court has made clear that courts must not "untether" the exceptions from "the justifications underlying" them. *Gant*, 556 U.S. at 343. The justifications of the search-incident-to-arrest exception, for example, do not justify all warrantless searches of an arrestee's vehicle, given that "in most cases the vehicle's passenger compartment will not be within the arrestee's reach at the time of the search." *Id.*

The Court, in other words, has held that the precedential force of any given Fourth Amendment decision depends on "the concrete factual context of the individual case." *Sibron v. New York*, 392 U.S. 40, 59

(1968); *see also Roaden v. Kentucky*, 413 U.S. 496, 501 (1973) ("A seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material.").

In *Riley*, for instance, the State of California argued—based on categorical-sounding language in the Supreme Court's decision in *United States v. Robinson*—that the Fourth Amendment permitted the warrantless search of an arrestee's cell phone incident to arrest because "[i]t is the fact of the lawful arrest which establishes the authority to search." 414 U.S. 218, 235 (1973); *see* Brief for Respondent State of California at 13-14, 54, *Riley v. California*, 573 U.S. 373 (2014) (No. 13-132), 2014 WL 1348466, at *13-*14, *54. The Supreme Court rejected that argument because "[a] search of the information on a cell phone bears little resemblance to the type of brief physical search considered in *Robinson*." 573 U.S. at 386. So too, in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), the Court explained that none of the traditional justifications for the third-party doctrine "hold[s] up" when applied to cell phone location data. *Id.* at 2219-20. It accordingly rejected the government's "mechanical[]" argument that because location data were technically the "business record[s]" of wireless carriers, they

9

automatically lost Fourth Amendment protection. *Id.* at 2219 (internal citation marks omitted).

## B.  The Supreme Court In Two Recent Cases Has Declined to Extend Traditional Warrant Exceptions to Cell Phones

The Supreme Court has performed this fact-specific analysis in two recent cases dealing specifically with cell phones and the data that they store and generate.  Both held that the relevant warrant exceptions did not "extend" to cell phones and their associated data.

*Riley v. California* considered the question whether a different exception to the warrant requirement—the search incident to arrest exception—"extend[s]" to " searches of data on cell phones."  573 U.S. at 386.  In a unanimous opinion the Supreme Court said no:  "instead… officers must generally secure a warrant before conducting such a search."  *Id.*  The Court reasoned that extending the doctrine to cell phones would be inappropriate because (1) cell phone searches are uniquely intrusive in terms of the quantity and quality of information they disclose; and (2) warrantless searches of cell phone data do not meaningfully advance either of the traditional purposes of the search-incident-to-arrest exception to the warrant requirement—*i.e.*, the need to

protect officer safety and the need to prevent the destruction of evidence before arrestees reach the stationhouse. *See id.* at 385-86. Instead, the Court held, simply seizing the phone advances both of those interests while permitting officers time and opportunity to obtain a warrant to search it. *See id.* at 388, 403. *Riley* stands for the proposition that "any extension of" traditional exceptions to the warrant requirement (like the border search exception) "to digital data has to rest on its own bottom." *Id.* at 393.

*Carpenter v. United States* involved the question whether a different exception to the warrant requirement—the third-party doctrine—"extend[s]" to searches of records containing "cell phone location information" held by telephone companies. 138 S. Ct. at 2216-17. The Supreme Court again said no: instead, "the Government must generally obtain a warrant supported by probable cause before acquiring such records." *Id.* at 2221. The Court reasoned that extending the third-party doctrine to records of cell phone location information would be inappropriate because (1) the information is more detailed and "all-encompassing" than any information that previously would have been exposed to a third-party in the past; and (2) such records are not

voluntarily exposed to third-parties because cell phones are "indispensable to participation in modern society" and the cell phone location information resulting from their use are generated by "dint of" the operation of the phone, not by the affirmative actions of its user. *Id.* at 2217-20. *Carpenter* stands for the proposition that much of the "intimate," "all-encompassing" data stored on a cell phone (such as location information) cannot be searched without a warrant, no matter where that information is, whether in the hands of a third-party company, or, as relevant here, stored on a cell phone physically located at the border. *Id.* at 2217; *see also id.* at 2220 (suggesting that any search capable of exposing "a detailed chronicle of a person's physical presence compiled every day, every moment" likely requires a warrant).

### C.    The "Border Search" Exception Permits Warrantless Searches to Interdict Contraband

One exception to the warrant requirement is the "border search" exception. *United States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004); *United States v. Molina-Isidoro*, 884 F.3d 287, 290 (5th Cir. 2018). The exception traces to the founding era. The First Congress authorized customs officials to search for and seize "goods, wares, and merchandises" that may be concealed in ships entering the country to avoid duties (but

it did not provide that authority to obtain evidence of crimes other than the contraband itself).  Act of July 31, 1789, 1 Stat. 29.  Because this statute was passed by the same Congress that proposed the Fourth Amendment, the Supreme Court has long cited the statute as a reason why warrantless border searches are not "unreasonable."  *Boyd v. United States*, 116 U.S. 616, 622-24 (1886); *see also United States v. Ramsey*, 431 U.S. 606, 616-18 (1977); *Carroll v. United States*, 267 U.S. 132, 150-51 (1925).  The statute is also cited as supporting suspicionless border searches, despite the fact that it only gives officials the power to enter ships "in *which they shall have reason to suspect* any goods, wares or merchandise subject to duty shall be concealed." Act of July 31, 1789, 1 Stat. 43 (emphasis added).  Like the original law, the modern version of the customs law is limited to the search and seizure of actual objects that are being imported unlawfully.  *See* 19 U.S.C. § 482(a).

Today, the border search exception permits border agents to search persons and property at the U.S. border "to identify citizenship, collect payment on dutiable good, and prevent the importation of contraband." 5 LaFave, *supra*, § 10.5(a); *see United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 376 (1971) (describing the border search

exception as "an old practice [that] is intimately associated with excluding illegal articles from the country"). It allows government agents to subject travelers and physical items entering the United States to "routine" searches without warrants or any suspicion. *Molina-Isidoro*, 884 F.3d at 291. And it permits border agents to engage in "non routine" searches without warrants as long as they have reasonable suspicion that the search is likely to uncover contraband. *Id.*

The Supreme Court has never addressed the application of the border search exception to searches of data or information carried by a traveler. It has decided three important border search cases in the last half-century: *United States v. Ramsey*, 431 U.S. 606 (1977), *United States v. Montoya de Hernandez*, 473 U.S. 531 (1985), and *United States v. Flores-Montano*, 541 U.S. 149 (2004). All three involved searches or seizures intended to prevent *physical* items from being smuggled into the country. In *Ramsey*, the Court held that customs agents may, with "reasonable cause," warrantlessly open sealed mail to determine whether the envelope contains drugs. 431 U.S. 606, 622-24. But the Court explicitly left unresolved the question whether border agents can warrantlessly open an envelope to read a letter inside. *See id.* at 622-24

& n.18.  In *Montoya de Hernandez*, the Court held that border agents may, without a warrant, temporarily seize a traveler at the border based on reasonable suspicion that "that the traveler is smuggling contraband in her alimentary canal."  473 U.S. 531, 541 (1985).  The Court "suggest[ed] no view on what level of suspicion" is required for more intrusive border searches "such as strip, body cavity, or involuntary x-ray searches."  *Id.* at 541 n.4.  Finally, in *Flores-Montano*, the Court held that border agents may remove and search a vehicle's gas tank to search for drugs without reasonable suspicion.  541 U.S. 149, 154-55 (2004).

### D.   Courts Are Divided Over the Application of the Border Search Exception to Cell Phones

The Circuits are divided over whether and how to extend the border search exception to cell phones.  The Eleventh Circuit has held that, notwithstanding *Riley*, "*no* suspicion is necessary to search electronic devices at the border."  *United States v. Touset*, 890 F.3d 1227, 1229, 1233 (11th Cir. 2018) (emphasis added.); *but see United States v. Vergara*, 884 F.3d 1309, 1317 (11th Cir. 2018) (Pryor, J., dissenting) (concluding that the border search exception does not permit warrantless forensic searches of electronics).

In contrast, the Fourth and Ninth Circuits have crafted hybrid rules for border searches of cell phone data. Both Circuits tightly circumscribe the *circumstances* in which border agents may forensically search a cell phone without a warrant.[3] In the Ninth Circuit, unless border agents are specifically searching for digital "contraband" on the phone, they must procure a warrant before forensically searching it. *United States v. Cano*, 934 F.3d 1002, 1020 (9th Cir. 2019). And in the Fourth Circuit, unless the "object" of the agents' suspicion "bear[s] some nexus to the purposes of the border search exception" border agents must get a warrant before performing a forensic search of a cell phone. *United States v. Aigbekaen*, 943 F.3d 713, 723 (4th Cir. 2019). Both circuits also require that border agents have "reasonable suspicion" before forensically searching a cell phone for "digital" contraband. *United*

---

[3] "'Forensic' searches are searches where border agents use sophisticated tools, such as software programs or specialized equipment, to evaluate information contained on a device, typically starting by making a copy of the device's data." *Alasaad v. Nielsen*, No. 17-CV-11730-DJC, 2018 WL 2170323, at *2 (D. Mass. May 9, 2018) (internal marks omitted). "Forensic searches can capture all active files, deleted files, files in allocated and unallocated storage space, metadata,...password-protected or encrypted data, and log-in credentials and keys for cloud accounts." *Id.* (internal marks omitted).

*States v. Kolsuz*, 890 F.3d 133, 146-47 (4th Cir. 2018); *United States v. Cotterman*, 709 F.3d 952, 962-63 (9th Cir. 2013) (en banc).

In addition to these cases in the courts of appeals, a district court in the First Circuit recently held that all warrantless cell phone searches at the border must be limited to searches for contraband (not evidence of a crime) and must be founded on reasonable suspicion. *See Alasaad v. Nielsen*, 419 F. Supp. 3d 142, 148 (D. Mass. 2019). The decision is now on appeal in the First Circuit. *See Alasaad v. Wolf*, No. 20-1081 (1st Cir.).

## E.   This Circuit Has Not Yet Ruled On Whether the Border Search Exception Extends to Searches of Cell Phone Data at the Border

This Court considered whether searches of cell phone data at the border presumptively require warrants in *United States v. Molina-Isidoro*, 884 F.3d 287, 290 (5th Cir. 2018). The Court held that because border agents acted in "good faith" reliance on the border search exception, the Court did not need to resolve whether they had, in fact, violated the Fourth Amendment by engaging in a warrantless cell phone search. *See id.* Therefore, as the Court wrote, "[w]e do not decide the Fourth Amendment question." *Id.* In a thorough and widely cited concurrence to his own majority opinion in that case, Judge Costa

expressed skepticism that the "traditional justification of seizing contraband, which an electronic search is not likely to accomplish" can justify warrantless cell phone searches at the border. *Id.* at 297 (Costa, J., specially concurring); *see Cano*, 934 F.3d at 1018 (citing and relying on Judge Costa's concurrence as persuasive authority for its holding).

## II.    FACTUAL BACKGROUND

### A.    ICE's and CBP's Policies Authorizing Border Agents to Conduct Warrantless Cell Phone Searches at the Border

In 2009, CBP and ICE issued policies authorizing warrantless searches of all electronic devices, including cell phones and computers, of any person entering or exiting the United States. ROA.549-550, ¶¶ 47-52. Until 2018, both policies authorized officers to "examine electronic devices" and "review and analyze the information encountered at the border"—"with or without individualized suspicion." ROA.550, ¶ 50. The policies also authorized ICE and CBP to retain devices and data indefinitely. ROA.550, ¶ 50.

On January 4, 2018, more than a year after Mr. Anibowei filed this lawsuit, CBP issued a new directive superseding its 2009 directive: CBP Directive No. 3340-049A (Jan. 4, 2018) (the "2018 Policy"). ROA.550, ¶ 53. ICE has not issued a comparable new policy. ROA.551, ¶ 54. The

2018 CBP Policy still authorizes agents to perform what CBP calls "basic searches" of cell phones without any individualized suspicion. ROA.551, ¶ 57. A "basic search" is by no means basic. The policy authorizes officers to command travelers to unlock their phones and present them for inspection, and it authorizes officers to access all content and communications contained within the device. ROA.551, ¶ 57; ROA.552, ¶ 61. An agent conducting a basic search "may examine an electronic device and may review and analyze information encountered at the border." ROA.551, ¶ 57.

The 2018 Policy also authorizes agents to conduct "advanced searches" (also known as "forensic" searches, *see supra* note 3) where there is reasonable suspicion of illegal activity or "a national security concern." ROA.551, ¶ 58. An advanced search involves connecting "external equipment, through a wired or wireless connection, to an electronic device not merely to gain access to the device, but to review, copy, and/or analyze its contents." ROA.551, ¶ 58. Data seized during an advanced search is subject to an elaborate data-retention policy that uses both the passage of time and the content of the data to determine

whether and for how long government agents may retain the data and with whom they may share it.  *See* ROA.552-554, ¶¶ 63-71.

No policy issued by DHS, ICE, or CBP requires agents to obtain a warrant before searching a cell phone in any manner, whether that involves hunting through its digital contents by hand (*i.e.*, a basic search) or using advanced forensic tools to copy and inspect its contents (*i.e.*, an advanced search).

### B.    Border Agents' Unconstitutional Searches of Mr. Anibowei's Cell Phone Data and Their Continued Unlawful Retention of That Data

Plaintiff George Anibowei is a naturalized U.S. citizen and an attorney in Texas.  ROA.557-58, ¶¶ 81-83.  A significant number of his clients are immigrants in removal proceedings adverse to DHS, and Mr. Anibowei regularly uses his smartphone to engage in sensitive and confidential communications with his clients.  ROA.544, ¶ 18; ROA.558, ¶ 83; ROA.563, ¶ 104.  Both his work and personal cell phones contain confidential client communications.  ROA.563, ¶¶ 105-06

Mr. Anibowei is a frequent traveler.  ROA.558, ¶ 85; ROA.564, ¶ 109.  He typically travels to Nigeria several times a year to visit his brothers and sisters who still live there, as well as his extended family

and friends.   ROA.558, ¶ 85.   He also regularly travels elsewhere in Africa and is a frequent tourist in Europe and the Caribbean.   ROA.558, ¶ 85.   Starting in 2014, government agents began subjecting Mr. Anibowei to extensive secondary screening nearly every time he traveled.   ROA.559-560, ¶¶ 87-93.

On October 10, 2016, border agents at Dallas-Fort Worth airport seized Mr. Anibowei's cell phone as he was returning to the Dallas area after a weekend visiting his best friend in Toronto.   ROA.562, ¶ 98. Acting without a warrant, the agents searched the cell phone and copied the data on it.   ROA.544, ¶ 16; ROA.545, ¶ 20; ROA.562, ¶¶ 101-02.   The government still has the data.   ROA.563, ¶ 105.

In the years since the October 10, 2016 search, border agents have searched Mr. Anibowei's phone without a warrant four additional times. ROA.563, ¶ 107.   A cell phone search in February 2017, was typical. ROA.564, ¶ 108.   Mr. Anibowei was returning from a visit to his friends and relatives in Nigeria, and was put into secondary inspection upon returning to the Dallas-Fort Worth airport.   ROA.564, ¶ 108.   In secondary inspection, border agents performed an extremely thorough search of all of Mr. Anibowei's luggage and asked to see his phone.

ROA.564, ¶ 108.   A border agent then performed an extensive warrantless search of Mr. Anibowei's phone in front of him.  ROA.564, ¶ 108.  Mr. Anibowei believes that the officer viewed his text messages, as well as encrypted messages he sent and received through WhatsApp (a messaging application very popular globally).   ROA.564, ¶ 108. Because Mr. Anibowei's email is not password protected on his phone, it is possible the officer viewed Mr. Anibowei's email, too.  ROA.564, ¶ 108.

All told, government agents have searched Mr. Anibowei's cell phone without a warrant five times, beginning with the first search and seizure in 2016.  ROA.544, ¶ 17.  In four of these instances, Mr. Anibowei saw the agent search his text messages and other communications. ROA.544, ¶ 17.

Mr. Anibowei intends to continue traveling internationally.  *See* ROA.564, ¶ 112.   Further, even though Mr. Anibowei has made the decision to stop carrying his work cell phone with him on international trips out of fear it will be searched, ROA.563, ¶ 105-06, Mr. Anibowei has no choice but to continue carrying his personal cell phone with him when he travels, ROA.563, ¶ 106.  To stop carrying his personal phone would render Mr. Anibowei completely inaccessible in either a personal or work

emergency.  ROA.563, ¶ 106.  Based on his experiences, Mr. Anibowei reasonably believes that government agents will search his cell phone again without a warrant whenever he travels internationally.  ROA.565, ¶ 113; *see* ROA.564, ¶¶ 110-12.

## III.  PROCEDURAL BACKGROUND

Three and a half years ago, on December 23, 2016, Mr. Anibowei, then acting *pro se*, brought this lawsuit alleging that the October 2016 warrantless search, and continued retention and dissemination of information taken from his phone, violated the First and Fourth Amendments.  ROA.24-40.  He sought a declaration and injunction to halt future searches and return all data obtained from his cell phone, and an order directing the government to inform him whether the government disclosed his data to other agencies or third parties.  ROA.39-40.

Over the course of the next two years, Mr. Anibowei's case ping-ponged between the magistrate judge and the district judge.  By February 2019, the only issue that had been definitively resolved was that Mr. Anibowei has Article III standing to bring his claims.  *See* ROA.368-72.  Finally, on February 14, 2019, the district court dismissed

Mr. Anibowei's complaint without prejudice on the grounds that—as pleaded—it was barred by principles of sovereign immunity. ROA.467-485. But the court noted the importance of the claims in the case and invited Mr. Anibowei to re-plead if he believed that he had a basis for overcoming sovereign immunity. ROA.483-85.

Mr. Anibowei then retained counsel. And a month after the district court issued its opinion and order, on March 14, 2019, Mr. Anibowei filed a Verified Second Amended Complaint. ROA.539-76. A month later, on April 16, Mr. Anibowei moved for partial summary judgment, or in the alternative, a preliminary injunction. ROA.635-37, 643-76.

Mr. Anibowei argued that summary judgment and vacatur of ICE's and CBP's policies were appropriate because there were no disputes of material fact in the case: his Verified Second Amended Complaint alleged that ICE's and CBP's policies authorized warrantless searches and that border agents searched Mr. Anibowei's cell phone without a warrant on multiple occasions and retained the data on it. ROA.658, 673, 674; *see also* ROA.790, 798; ROA.960:2-16, 989:17-25. Indeed, the government did not dispute any of these material facts in its opposition to Mr. Anibowei's motion. *See* ROA.741-78; *see also* ROA.910. Mr. Anibowei also sought a

preliminary injunction in order to expedite the relief in light of the irreparable harm he suffers from the continued warrantless searches and unlawful retention of his cell phone data. ROA.636-37, 673-74, 657.

Nine months later, on January 14, 2020, the district court denied Mr. Anibowei's motion for summary judgment or a preliminary injunction. ROA.882. The district court accepted that the material facts recited above are undisputed. *See* ROA.874-78. Nonetheless, the district court denied Mr. Anibowei summary judgment because no controlling precedent from this Court or the Supreme Court squarely holds that warrants are required to search cell phones at the border. ROA.880. Thus, the Court reasoned, Mr. Anibowei "failed to demonstrate under the 'heavy' beyond peradventure standard that he is entitled to partial summary judgment as a matter of law." ROA.880.

The district court also refused to issue a preliminary injunction. ROA.880-81 The district court held that Mr. Anibowei had failed to establish all "four essential elements for obtaining" a preliminary injunction. ROA.880-81 The district court did not analyze the preliminary injunction factors individually, nor did the court specify which element Mr. Anibowei had failed to satisfy. *See* ROA.880-81.

This appeal followed. ROA.883. Shortly after Mr. Anibowei appealed, the government filed an Answer, admitting that the relevant searches were warrantless and that the government retained his data. ROA.906, ¶ 4; ROA.910, ¶¶ 16-17. The district court also stayed the case at the government's request, over Mr. Anibowei's opposition. ROA.1071. The government procured the stay, in part, by representing to the district court that this Court could resolve *both* the motion for a preliminary injunction *and* the motion for partial summary judgment in this appeal. ROA.1065-66.

## SUMMARY OF ARGUMENT

The Fourth Amendment generally requires border agents to secure a warrant supported by probable cause before searching a cell phone at the border. That conclusion follows (1) from the reasoning of the Supreme Court's precedents governing cell phone searches, data searches, and the border search exception; (2) from the significant Fourth Amendment anomalies that would result from a rule that permitted the government to warrantlessly search data for no other reason than that it was present on a cell phone at the border; and (3) from First Amendment precedents demanding heightened Fourth Amendment protections for

searches of papers and other materials that memorialize thoughts, communication, and expression.

**I.** The reasoning of the Supreme Court's seminal cell phone search precedent *Riley*, and of its recent data search precedent *Carpenter*, along with the logic of its three important modern border search precedents, show that the "border search" exception does not extend to cell phones. *Riley* holds that cell phones are so different from any other effects routinely carried on the person that the traditional exceptions to the warrant requirement must be considered anew to determine whether they "extend" to cell phones. 573 U.S. at 393. *Riley* instructed that, in determining whether an exception to the warrant requirement applies to a cell phone, the interests served by the exception must be weighed against the almost incomparable privacy invasion from a cell phone search. *Carpenter* bolstered those considerations by explaining that the *kind* of information typically located on cell phones is so detailed and all-encompassing that it must typically be protected by the warrant requirement.

Under the *Riley* and *Carpenter* rubrics, there is no justification for extending the border search exception to searches of the digital contents

of cell phones at the border. These searches are so untethered from the governmental interests served by the border search exception—and cell phone searches impinge so deeply on privacy—that they can be justified only with the protections afforded by warrants supported by probable cause.

Warrantless cell phone searches do not advance the government's purported interest in preventing the smuggling of "digital" contraband. People do not typically use cell phones to smuggle data and it would make little sense for them to do so. Anyone wishing to get data into or out of the United States can simply send the data over the internet. And to the degree an individual is absolutely determined to smuggle data over the border on a physical cell phone, he can readily encrypt and obscure the data such that it is impossible for border agents to obtain. Thus the only individuals whose phones are likely to expose evidence of criminal wrongdoing to the government are individuals who are *not* intentionally using the phone to smuggle any information into or out of the United States.

Moreover, a rule permitting warrantless searches of the data on cell phones under the border search exception would create significant

anomalies, and if taken to its logical conclusion, would gravely threaten the privacy of every American. The necessary implications of permitting warrantless cell phone searches at the border are shocking in their breadth. If the government is correct that the need to prevent "digital contraband" from crossing the border is so paramount that it justifies searching cell phones at the border without warrants, it also justifies warrantlessly intercepting every email and text message that crosses the border even when it is *not* carried on a cell phone. That is inconsistent with the long-settled understanding of the scope of the border search exception, which has never been held to permit border agents to intercept data simply because it crosses the border.

The First Amendment interests implicated by the search of digital data also demand that government agents obtain warrants before conducting cell phone searches. The Supreme Court has held that the First Amendment can elevate the level of Fourth Amendment protection a particular search requires to safeguard First Amendment interests. *See New York v. P.J. Video, Inc.*, 475 U.S. 868, 874-75 (1986); *Zurcher v. Stanford Daily*, 436 U.S. 547, 565 (1978). The looming possibility of a cell phone search has an extraordinary chilling effect on the exercise of

First Amendment freedoms. Indeed, Mr. Anibowei has ceased carrying his work cell phone when he travels internationally, and carries his personal cell phone only out of necessity. Only the preconditions for a warrant—probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness—strikes an appropriate balance between this chilling effect and legitimate law enforcement needs.

**II.** The court should reverse the district court's decision denying Mr. Anibowei summary judgment. As the government has already told the district court, Mr. Anibowei's motion for a preliminary injunction is "inextricably intertwined" with the district court's denial of his motion for partial summary judgment and therefore this Court has jurisdiction to decide it. ROA.1065-66 (citing *Cardoni v. Prosperity Bank*, 805 F.3d 573, 579 (5th Cir. 2015)). No relevant facts are in dispute. The Court should direct the entry of partial summary judgment in Mr. Anibowei's favor and direct the district court to vacate the relevant provisions of ICE's and CBP's unlawful agency policies.

**III.** In the alternative, the court should reverse the district court's decision denying Mr. Anibowei a preliminary injunction. He is likely to

succeed on the merits of his claims; he has established a likelihood of irreparable harm as well as ongoing irreparable harm from the government's continued retention and use of his data; and the balance of interests clearly weighs in favor of a preliminary injunction.

## STANDARD OF REVIEW

This Court reviews a decision to deny a motion for summary judgment *de novo*, applying the same standards as the district court. *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013). Thus, this Court will reverse a denial of summary judgment if the Appellant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Illusions—Dallas Private Club, Inc. v. Steen*, 482 F.3d 299, 304 (5th Cir. 2007); *see also Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184 (5th Cir. 2005); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

This Court reviews a district court's decision denying a preliminary injunction for abuse of discretion. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003). "A decision grounded in erroneous legal principles is reviewed

de novo." *Id.*; *see also New York Life Ins. Co. v. Gillispie*, 203 F.3d 384, 386 (5th Cir. 2000) (same). "As to each element of the district court's preliminary-injunction analysis, the district court's findings of fact are subject to a clearly-erroneous standard of review, while conclusions of law are subject to broad review and will be reversed if incorrect." *Janvey v. Alguire*, 647 F.3d 585, 592 (5th Cir. 2011) (internal citation marks omitted).

## ARGUMENT

## I.    ICE'S AND CBP'S POLICIES VIOLATE THE FOURTH AMENDMENT

The Fourth Amendment requires government agents to obtain a warrant before searching a cell phone except in narrow case-specific instances like exigent circumstances. *See Gant,* 556 U.S. at 338; *see also Riley*, 573 U.S. at 401-02 (identifying exigent circumstances as a "case-specific exception[]"); *Carpenter* , 138 S. Ct. at 2222 (same). The test for whether a non-case-specific exception like the border search exception should be extended to cell phones is whether applying it to cell phones would "untether the rule from the justifications underlying the... exception." *Riley*, 573 U.S. 373, 386-87; *Cano*, 934 F.3d at 1011 (same); *Aigbekaen*, 943 F.3d 713, 720-21 (same).

The justification for the border search exception is based on the premise that an individual's "expectation of privacy [is] less at the border than in the interior" and that "the Fourth Amendment balance between the interests of the Government and the privacy right of the individual" is "struck much more favorably to the Government at the border." *Montoya de Hernandez*, 473 U.S. at 539-40. And the border search exception has, from its inception, existed to prevent contraband from crossing the border. *See Cano*, 934 F.3d at 1019 ("[T]he border search exception is restricted in scope to searches for contraband."); *Aigbekaen*, 943 F.3d at 721 ("[T]he border search exception's purposes" are "protecting national security, collecting duties, blocking the entry of unwanted persons, or disrupting efforts to export or import contraband").

Extending the border search exception to searches of cell phones untethers the border exception from these justifications in three fundamental ways: (1) the privacy and expressive interests in the data stored on cell phones are far greater than any other effects routinely carried on the person; (2) cell phones are an indispensable part of modern life and thus travelers cannot protect their privacy interests in cell phones by traveling without them; and (3) warrantless cell phone

searches at the border do not directly advance the government's interest in preventing contraband or persons from crossing the border.

Warrantless cell phone searches are simultaneously too far-reaching and too easily evaded to fall within the scope of the border search exception. And the logic that would permit warrantless cell phone searches at the border has no principled stopping point. The same logic would permit the government to warrantlessly read every letter that crosses the border, wiretap every international call, and intercept every email. For those reasons, the border search exception to the warrant requirement does not extend to searches of the digital contents of a cell phone. Such searches furthers none of the governmental interests that justify the border search exception and impinge on personal privacy to an unprecedented and unconstitutional degree. For that reason border agents must do the same thing the Fourth Amendment requires police officers to do every day before conducting cell phone searches—"get a warrant." *Riley*, 573 U.S. at 403; *see also Carpenter*, 138 S. Ct. at 2221 ("[T]he Government's obligation is a familiar one—get a warrant.").

### A.    Cell Phone Searches Represent a New Technological Context and Thus The Court Must Determine Whether the Border Search Exception "Extends" to Them

When a modern innovation gives law enforcement the ability to obtain personal information formerly beyond its reach, that "practical" reality requires courts to assess the legality of the search not only in light of prior case law but, more generally, in terms of the timeless concerns underlying the Fourth Amendment.  *See Carpenter*, 138 S. Ct. at 2214 (cell-site location data); *Kyllo v. United States*, 533 U.S. 27, 33-34 (2001) (infrared imaging); *Katz v. United States*, 389 U.S. 347, 352-53 (1967) (listening in on telephone calls).  Thus, the Court has repeatedly advised that "it would be foolish" to contend that the Fourth Amendment cannot take account of "the advance of technology."  *Kyllo*, 533 U.S. at 33-34.  "Under any other [approach] a constitution would indeed be as easy of application as it would be deficient in efficacy and power.  Its general principles would have little value and be converted by precedent into impotent and lifeless formulas."  *Weems v. United States*, 217 U.S. 349, 373 (1910).

*Riley* reflects exactly these considerations. *Riley* held that cell phones may not be searched incident to arrest without a warrant,  573

U.S. at 386, and the way it reached its holding is important. The Court considered how a canonical case articulating the search incident to arrest exception to the Fourth Amendment's warrant requirement—*United States v. Robinson*, 414 U.S. 218 (1973)—applied to cell phones. The Court stated: "We… <u>decline to extend</u> *Robinson* to searches of data on cell phones, and hold instead that officers must generally secure a warrant before conducting such a search." *Riley*, 573 U.S. at 386 (emphasis added). Thus, the Court did not overrule any aspect of *Robinson*. Rather, it held that *Robinson* should *not be extended* to apply to cell phones.

This language, crafted by the Chief Justice, is no anomaly. The Court, again through the Chief Justice, used the same language recently in *Carpenter v. United States*, when it held that law enforcement must get a warrant to access historical cell phone location information. 138 S. Ct. at 2217. After discussing the two canonical third-party-doctrine cases—*Smith v. Maryland*, 442 U.S. 735 (1979) and *United States v. Miller*, 425 U.S. 435 (1976)—the Court stated: "We <u>decline to extend</u> *Smith* and *Miller* to cover these novel circumstances." *Carpenter*, 138 S. Ct. at 2217 (emphasis added).

36

Through this deliberate language, *Riley* held that cell phones are unique under the Fourth Amendment. *See* 573 U.S. at 393. They were never subject to the search-incident-to-arrest exception in the first place. *See id.* at 386. *Riley* held that courts must assess whether traditional exceptions to the warrant requirement "extend" to cell phones. *See id.* One cannot read *Riley* without concluding that cell phones are fundamentally different than anything that has come before. *See, e.g., id.* at 385, 396-97. Nor can one read *Carpenter* without concluding that the cell phone data implicates privacy interests of paramount importance. *See* 138 S. Ct. at 2217, 2219-20.

Accordingly, the fact that the border search exception has been around for a long time is immaterial. Both the search-incident-to-arrest exception and the third-party doctrine applied to various searches for more than 40 years before *Riley* and *Carpenter* determined they did not extend to cell phones and cell phone location records, respectively. The "border search exception" to the warrant requirement stems from a customs statute enacted more than 200 years ago, for a world without cell phones at a time when cell phones could not even have been imagined, to authorize border agents to engage in routine searches for

contraband at the border. A doctrine arising from a statute enacted to allow customs agents to search the cargo holds of sailing ships is no safe harbor for a rule that would allow government agents to search through a person's emails, text messages, photographs, private notes, and other sensitive materials at international airports.

*Riley* also shows that it is a mistake to analogize cell phone searches to other kinds of border searches or to other types of searches like those of the body, luggage, or vehicles. Warrantless body searches at the border, like the body cavity searches at issue in *Montoya de Hernandez*, 473 U.S. at 537, are not like cell phone searches. For one thing, searching the data on a cell phone cannot turn up drugs, weapons, or other contraband, whereas searching luggage or the human body can. For another, searching a cell phone is often tantamount to "ransacking [a man's] house for everything which may incriminate him," *Riley*, 573 U.S. at 396, whereas no search of luggage or even of the body, no matter how mortifying, can reveal information at once so extensive and so intimate.

Finally, *Riley* and *Carpenter* show that it would be an error to extend the border search exception to cell phones on the basis of a supposed "consensus" among lower courts. When the Supreme Court

decided *Riley*, only one Circuit (the First), in a divided panel decision, had held that searches of cell phone data incident to arrest require a warrant, splitting with every other circuit to have decided the question (*i.e.*, the Fourth, Seventh, and Tenth Circuits and with this Court). *See United States v. Wurie*, 728 F.3d 1, 16 (1st Cir. 2013) (Howard, J., dissenting) (explaining that the circuits had "unanimously" rejected a warrant requirement and collecting other circuits' cases). When the Supreme Court decided *Carpenter*, only one Circuit (the Third), had held that warrants were ever required to obtain historical cell phone location information from third parties (and even then, only in some circumstances), splitting with every other circuit to decide the question (*i.e.*, the Fourth, Sixth, and Eleventh Circuits and with this Court).[4] *Riley* and *Carpenter* show that an apparent "consensus" in the lower courts is less important than careful attention to the justifications

---

[4] *Compare In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't*, 620 F.3d 304, 319 (3d Cir. 2010), *with United States v. Carpenter*, 819 F.3d 880, 884 (6th Cir. 2016); *United States v. Graham*, 824 F.3d 421, 424-25 (4th Cir. 2016); *United States v. Davis*, 785 F.3d 498, 511-13 (11th Cir. 2015); *In re Application of U.S. for Historical Cell Site Data*, 724 F.3d 600 (5th Cir. 2013).

underlying a warrant exception and the significant privacy concerns raised by the search of data on cell phones.

Thus, because cell phones are unique, the burden here is on the government to establish that the border search exception should be extended to searches of cell phone data. That it cannot do.

**B.    Neither of the Justifications For the Border Search Exception Support Extending the Exception to Cell Phones**

**1.    Individuals' Reduced Privacy Interests at the Border Are Outweighed by the Unmatched Privacy and Expressive Interests in the Data Stored on Cell Phones**

That an individual's "expectation of privacy [is] less at the border than in the interior," *Montoya de Hernandez*, 473 U.S. at 539, cannot justify the warrantless search of a person's cell phone at the border. Cell phones are an indispensable part of modern life; people cannot realistically travel without them. Indeed, the *Riley* Court called cell phones "such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." 573 U.S. at 385. And cell phone searches impinge more significantly on individual privacy and expressive interests than searches of any other objects routinely carried on the person. These

interests outweigh the reduced expectations of privacy that travelers have at the border.

It is difficult to overstate the privacy interests implicated by the search of the data on a cell phone. As the Court held in *Riley*, "cell phones differ in both a quantitative and a qualitative sense from other objects that might be" searched at the border. 573 U.S. at 393. The Court noted that "a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house." *Id.* at 396. Indeed, "[a] phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is." *Id.* at 396-97.

Cell phones frequently contain a host of data for which courts have held that warrants are absolutely required. For instance, many cell phones collect and store location tracking data—not just of the user, but often of the user's closest contacts. CBP and ICE officers can access this data from the phone itself by, for example, viewing a user's "location history" or "timeline" in Google Maps, or by accessing an iPhone's "Settings." *Carpenter* recently held that such data—to the extent it

reveals a comprehensive "record of [one's] physical movements"—is off-limits to law enforcement without a warrant. 138 S. Ct. at 2217, 2222-23. *Carpenter* "declined to extend" the third-party doctrine to such information. *Id.* Here, the third party is not even present. The data that CBP and ICE would search is *on the phone itself.*

Similarly, courts have found that email searches require a warrant, and virtually all cell phones enable email access. The Sixth Circuit's longstanding and widely cited precedent in *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010), requires law enforcement officials to secure a warrant based on probable cause before searching an individual's emails in light of the strong privacy interests implicated in an email search. *Id.* at 284-85. Other courts have used similar reasoning to decline to extend the third-party doctrine to messages sent on social media. *See, e.g.*, *R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist., No. 2149*, 894 F. Supp. 2d 1128, 1142 (D. Minn. 2012); *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 991 (C.D. Cal. 2010). If warrantlessly searching emails held by a third party violates the Fourth Amendment, it follows that warrantlessly searching emails on a person's *own cell phone* also violates the Fourth Amendment.

Moreover, the threat of cell phone searches powerfully chills the exercise of protected speech. Policies that permit the government to collect information "can threaten the ability to express oneself, communicate with others, explore new ideas, and join political groups." *See* Daniel J. Solove, *The First Amendment as Criminal Procedure*, 82 N.Y.U. L. Rev. 112, 121 (2007). And ICE's and CBP's policies chilled Mr. Anibowei's expression in fact: because of these policies, and the warrantless searches he has undergone already, he has ceased carrying his work cell phone when travelling internationally. It is for this exact reason that numerous cases have recognized that, where expressive materials are involved, "the preconditions for a warrant—probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness"—are necessary to ensure that searches do not violate the First Amendment. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 565 (1978); *New York v. P.J. Video, Inc.*, 475 U.S. 868, 874-75 (1986); *see also Stanford v. Texas*, 379 U.S. 476, 485 (1965) (explaining that the warrant requirement must be followed with the "most scrupulous exactitude" when the "things" to be searched or seized implicate the freedom of expression).

It is no answer to say that travelers can leave their phones at home.[5]  As the Supreme Court has recently reiterated, carrying a cell phone is not "voluntary"—in the sense that taking a diary, a sealed envelope, or even a mobile home across the border might be considered voluntary—because "carrying [a cell phone] is indispensable to participation in modern society." *Carpenter*, 138 S. Ct. at 2220.  For most individuals there is no alternative.  *See City of Ontario, Cal. v. Quon*, 560 U.S. 746, 760 (2010).  "Now it is the person who is not carrying a cell phone, with all that it contains, who is the exception." *Riley*, 573 U.S. at 395-96.  Doctors need to carry phones so that they can be on call for patients who might need them.  Lawyers like Mr. Anibowei carry their cell phones so that they can be available to their clients.  Individuals from every walk and way of life now keep their cell phones close at hand at all times so that they can be available and able to communicate with others.  There are some private or embarrassing articles that international travelers might leave at home rather than risk their exposure to

---

[5] *See* Orin S. Kerr, *The Fourth Amendment and the Global Internet*, 67 Stan. L. Rev. 285, 321 (2015) (stating that "an important justification for the border search exception" is that "the border is announced and the prospect of a search is understood").

government agents at the border. Not cell phones. It is simply untenable—given cell phones' necessity and ubiquity—to expect travelers to routinely check their cell phones at the border lest they risk having their phones' contents searched.

Thus, notwithstanding that an individual's "expectation of privacy [is] less at the border than in the interior," *Montoya de Hernandez*, 473 U.S. at 539, that diminished expectation of privacy at the border cannot justify the intrusion on a person's privacy and threat to their freedom of expression caused by the government's rummaging at will through a cell phone that a person is carrying when travelling.

> **2. The Government's Interest In Preventing Contraband from Crossing the Border Does Not Justify Warrantless Cell Phone Searches**

The government cannot justify warrantless cell phone searches on the grounds that they further the government's interest in preventing contraband from crossing the border (1) because cell phones are unlikely to contain any relevant "contraband" subject to the border search exception; (2) because actual smugglers can easily evade such searches; (3) because the amount of intensely private and expressively important information that cell phone searches expose far outweighs the limited

types of contraband such searches might uncover; and (4) because the logic that would permit warrantless searches of cell phone data has no limiting principle and would also permit the government to intercept all data that crosses the border.

*First*, the digital contents of a smart phone cannot include physical contraband, and thus a search of those contents do not implicate the fundamental purposes underlying the border search exception. *See Cano*, 934 F.3d at 1018-19. Data lacks the one characteristic of physical goods that justifies the border search exception, namely, that because they are tangible, they have to physically cross the border *somewhere*. Data, in contrast, constantly flows into and out of the United States without any need to take a physical item across the border.

Thus, to the extent that the government argues that there can be such a thing as "digital" contraband—a strained concept, given contraband's well-established definition as illicit "goods"—the probability that any given traveler in fact has digital contraband on their phone is vanishingly small. The government has identified child pornography, classified information, malware, and export-controlled material as the types of "contraband" that cell phones might carry. But

there is almost no reason to believe anyone would ever intentionally smuggle that kind of data into or out of the United States by way of carrying a cell phone over the border, as opposed to over the internet.  If the government has an interest in interdicting "digital" contraband, searching cell phones is not an effective means of doing so.  The notion that every traveler should be vulnerable to having his "digital life … hijacked simply by crossing a border," *United States v. Cotterman*, 709 F.3d 952, 965 (9th Cir. 2013) (en banc), based on the remote possibility that some travelers might be attempting to smuggle digital contraband on a phone, is objectively unreasonable.

*Second,* the fact that any individual who wishes to smuggle digital contraband into the United States without detection can readily evade a warrantless border search further establishes the irrationality of extending the border search exception to cell phones.  An individual who wishes to bring digital contraband into the United States can simply upload the contraband to the cloud, delete it from the phone, then download the data back onto the phone on the other side of the border, thereby eliminating any possibility the data might be found on the phone.  And a truly dedicated smuggler of digital contraband, hellbent on

carrying the data over the border on the phone itself, could readily use encryption software available on the open market to prevent government agents even from finding any digital contraband on the phone, let alone accessing it, by scrambling the data, making it appear benign and uninteresting, or locking it behind impregnable encryption. Perversely, the only people likely to be caught with incriminating information by warrantless cell phone searches at the border are people who are not trying to smuggle data across the border at all but merely happen to have incriminating data on their phone. The possibility of capturing the occasional unsuspecting traveler is no justification for exposing the cell phones of millions of innocent people to warrantless searches.

*Third*, stripping away warrant protections from cell phones because border agents might occasionally find digital contraband on a phone is all the more unreasonable in light of the vast amount of intensely private and expressively important material typically found on a cell phone. Because cell phone searches unearth "vast quantities of personal information," such searches bear "little resemblance to the type of brief physical search[es]" covered by the border search exception. *Riley*, 573 U.S. at 386.

*Fourth*, the necessary implications of the government's position are shocking in their breadth. If the need to prevent this "digital contraband" from crossing the border justifies the warrantless search of every cell phone, by the same logic it also justifies the warrantless interception of every bit of data that crosses the border—whether over the internet or over wireless towers. Put differently, if the government is correct that the need to prevent "digital contraband" from crossing the border is so paramount that it justifies searching cell phones without warrants, it also justifies warrantlessly intercepting every email and text message that crosses the border.[6] It is beyond dispute that the government cannot intercept and read a person's emails just because those emails happen to cross the border. *See United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div. (Keith)*, 407 U.S. 297, 308-321 (1972) (requiring warrants to engage in surveillance directed at domestic concerns, even domestic

---

[6] *See* Kerr, *The Global Internet*, 67 Stan. L. Rev. at 318, 323, *supra* note 5 (explaining that purely domestic internet communications "can and do travel around the world" and "[e]ven a regular [domestic] telephone call today can be routed anywhere"); *see also, e.g.*, *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 851 (1997) (explaining that "cyberspace" is a "unique medium ... located in no particular geographical location but available to anyone, anywhere in the world, with access to the Internet").

national security concerns).  The government cannot suddenly gain that power just because that person's emails happen to be on a cell phone at the border.

## C. Additional Considerations Also Favor Preserving the Warrant Requirement for Cell Phone Searches at the Border

Three additional considerations favor preserving the warrant requirement when cell phones are searched at the border.

*First,* existing case-specific exceptions to the warrant requirement fully address the government's hypotheticals about possible threats to the nation's security that might arise from requiring government agents to procure warrants before searching the data on cell phones.  In cases involving case-specific need—for example, "to prevent the imminent destruction of evidence," "to pursue a fleeing suspect," and "to assist persons who are seriously injured or are threatened with imminent injury"—border agents would have the authority to warrantlessly search cell phones.  *Riley*, 573 U.S. at 402; *see Carpenter*, 138 S. Ct. at 2223 (same).  The government has yet to devise a hypothetical requiring a warrantless cell phone search that is not already covered by an existing case-specific exception to the warrant requirement.

*Second*, requiring border agents to obtain a warrant before searching a cell phone furthers the core purposes of the warrant requirement to prevent government agents from abusing their authority by weaponizing the possibility of intrusion onto an individual's privacy and to draw a bright line demarcating lawful searches from unlawful ones. Those concerns are at their zenith in the border context, where border agents already have access to immense amounts of information about many travelers and could therefore abuse their positions of power and authority to engage in searches designed to intimidate, hassle, and punish, or to circumvent the warrant requirement applicable to ordinary criminal investigations.[7] "A warrant serves primarily to advise the citizen that an intrusion is authorized by law and limited in its permissible scope and to interpose a neutral magistrate between the citizen and the law enforcement officer engaged in the often competitive enterprise of ferreting out crime." *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 667 (1989) (citation omitted); *see also United States*

---

[7] *See Aigbekaen*, 943 F.3d at 717-18 (describing how government agents used advance knowledge of defendant's travel plans to plan a warrantless cell phone search at the border to further a criminal investigation); *Kolsuz*, 890 F.3d at 138-39 (4th Cir. 2018) (same).

*v. Lefkowitz*, 285 U.S. 452, 464 (1932) ("Security against unlawful searches is more likely to be attained by resort to search warrants than by reliance upon the caution and sagacity of petty officers."). The need for a warrant is greatest when an officer has vast discretion; a magistrate must limit that discretion by specifying with particularity what the officer may or may not inspect.

This case vividly illustrates the importance of the bright line created by the warrant requirement. Unless border agents are required to have warrants before searching cell phones, in order for Mr. Anibowei to win the right to have the government destroy the data it downloaded from his phone, he will first be required to seek discovery to depose border agents to determine whether they *in fact* had reasonable suspicion to search his cell phone. The burden of suing federal agents, fighting for discovery, and winning a federal trial—all just to obtain an order directing government agents to destroy the fruits of an unlawful search— is more than the ordinary citizen can or should reasonably be expected to undertake. The bright-line warrant requirement is not just helpful in these circumstances, but necessary to enforce the Constitution's privacy protections.

*Third*, securing a warrant is far less burdensome now than it was in the 1960s and 1970s, when many of the leading Fourth Amendment cases were decided. The Federal Rules of Criminal Procedure now allow law enforcement officers to secure valid warrants using a variety of speedy means, including by telephone and email. *See* Fed. R. Crim. P. 4.1; *see also Missouri v. McNeely*, 569 U.S. 141, 154-55 (2013). In evaluating the balance of interests in its Fourth Amendment cases, the Supreme Court has for many years considered the burden requiring a warrant would impose on law enforcement officers. *See, e.g.*, *Steagald v. U.S.*, 451 U.S. 204, 222 (1981). And the ease of securing a warrant only increases as technology develops. As the Supreme Court noted in *Riley*, in one jurisdiction, "police officers can e-mail warrant requests to judges' iPads [and] judges have signed such warrants and emailed them back to officers in less than 15 minutes." 573 U.S. at 401 (alteration in original) (citation omitted). Today, securing a warrant poses little obstacle to the law enforcement interests implicated in a cell phone search at the border.

**D.    This Court Should Follow the Logic, Though Not the Exact Holdings, of the Ninth Circuit in *Cano* and the Fourth Circuit in *Aigbekaen***

The Ninth Circuit in *Cano* and the Fourth Circuit in *Aigbekaen* correctly concluded that the border search exception is "narrow," *Cano*, 934 F.3d at 1013, and bounded by "the ultimate touchstone of the Fourth Amendment," "reasonableness," *Aigbekaen*, 943 F.3d at 722 (quoting *Riley*, 573 U.S. at 381). Both correctly identified that warrantless cell phone searches may become "too attenuated from [the] historic rationales" for the border search doctrine to "fall under the exception." *Aigbekaen*, 943 F.3d at 721 (quoting *Kolsuz*, 80 F.3d at 143); *Cano*, 934 F.3d at 1014-15 (recognizing the risks inherent in warrantless searches of devices "capable of storing warehouses full of information").

But both courts erroneously created an artificial distinction between cell phone searches at the border directed at border-related concerns (which the courts held may be warrantless) and cell phone searches at the border undertaken for other purposes (which the courts held require a warrant). *Cano*, 934 F.3d at 1020; *Aigbekaen*, 943 F.3d at 723. This distinction is unworkable. There is no effective method for courts to police whether border agents undertook a warrantless cell

phone search for permissible border-related purposes or for wholly impermissible purposes. And the risk of post hoc justification for otherwise unlawful searches is incredibly high.[8] The inevitable result of the Fourth and Ninth Circuit rules will be the systematic violation of the Fourth Amendment rights of thousands of innocent people who have no means of knowing whether their Fourth Amendment rights were violated and no method to effectively challenge the search.

The Supreme Court rejected *precisely* these kinds of "fallback options for permitting warrantless cell phone searches under certain circumstances" in *Riley*, explaining that "if police are to have workable rules, the balancing of the competing interests must in large part be done on a categorical basis—not in an ad hoc, case-by-case fashion by individual police officers." 573 U.S. at 398 (cleaned up); *see also id.* at

---

[8] *See* Wayne R. LaFave, *Being Frank About the Fourth: On Allen's "Process of 'Factualization' in the Search and Seizure Cases"*, 85 Mich. L. Rev. 427, 459 (1986) (explaining that absent "pre-search or preseizure memorialization of the facts being relied upon to justify the fourth amendment activity, there is the risk that the police will engage in post hoc manipulation of the facts in an effort to justify their action" and that "even if the police are paragons of virtue, there is nonetheless a significant chance that the probable cause facts will not be accurately reported if the occasion for communicating them to a judge comes only months later").

398-401 (rejecting four different proposed case-by-case tests for permitting warrantless cell phone searches incident to arrest). The cost of opening a nominally narrow exception for "contraband" cell phone searches at the border is simply too great.

This case shows why. To this day—now *years* after the first time border agents searched his cell phone—Mr. Anibowei has no idea why they undertook the search. Mr. Anibowei would have no meaningful way to test the reasons a border agent provides as supporting the search. And the border agent who conducted the search may no longer even recall the real reason.

The Ninth and Fourth Circuit's rules are also unsound in theory. *Riley* teaches that the appropriate approach is simply to hold that exceptions to the warrant requirement do not extend to cell phone searches where their justifications do not apply, not to construct a new, modified version of the exception and extend it to cell phones.

\* \* \*

Given the unparalleled privacy interests that individuals have in the data on their cell phones, and the fact that warrantless cell phone searches do not meaningfully advance any of the interests that underlie

the border search exception, the Court should hold that the border search exception does not extend to cell phones and that warrants are required to search them, even at the border, absent case-specific circumstances such as exigency.

## II. THE COURT SHOULD DIRECT THE DISTRICT COURT TO ENTER SUMMARY JUDGMENT FOR MR. ANIBOWEI

Because it is undisputed that ICE's and CBP's policies permit warrantless cell phone searches, and that Mr. Anibowei's data were taken pursuant to such a warrantless search, the court should grant Mr. Anibowei summary judgment, vacate ICE's and CBP's unlawful policies, and order his data destroyed.

This Court undoubtedly has the power to direct the entry of summary judgment here. "[A]n order granting or refusing an injunction brings before the appellate court the entire order, not merely the propriety of injunctive relief, and the appellate court may decide the merits so long as concerned only with the order from which the appeal is taken." *Ali v. Quarterman*, 607 F.3d 1046, 1048 (5th Cir. 2010) (quoting *Magnolia Marine Transp. Co. v. Laplace Towing Corp.*, 964 F.2d 1571, 1580 (5th Cir.1992) (emphasis added)); *see also Escobar v. Montee*, 895

F.3d 387, 392-93 (5th Cir. 2018) (describing circumstances in which pendent appellate jurisdiction is proper).

This case is uniquely suitable for this Court to exercise its discretion and decide whether summary judgment is appropriate. The case has already been pending for 3.5 years, has not moved beyond the motion to dismiss stage, and is now stayed pending the outcome of this appeal. All of the relevant facts are undisputed. The issue is purely legal. Additional proceedings in the district court will not further clarify or elucidate the question. The parties fully briefed the question below. And the government successfully obtained a stay of all further district court proceedings by telling the district court that this appeal could "address issues in the case beyond the requested injunctive relief." ROA.1066.

Most importantly, the district court denied summary judgment in this case because it concluded that—even though the question presented is purely legal—that Mr. Anibowei had "failed to demonstrate under the 'heavy' beyond peradventure standard that he is entitled to partial summary judgment as a matter of law." ROA.881. In other words, the district court held that this Court's precedents were not yet clear enough for the court to grant summary judgment to Mr. Anibowei. Rather than

risk further delay and possibly another appeal on this purely legal issue, the Court should instead reach the merits of Mr. Anibowei's motion for summary judgment and hold that the border search exception does not extend to cell phones.

This case is analogous to *Byrum v. Landreth*, 566 F.3d 442 (5th Cir. 2009). In *Byrum*, the plaintiff appealed the denial of a preliminary injunction and asked this Court to exercise its pendent appellate jurisdiction over the district court's denial of summary judgment because the Court could not "consider the preliminary injunction ruling here without also considering the very same law and facts on which the district court premised its denial of summary judgment." 566 F.3d at 450. The Court "decline[d] the invitation," in that case, but only because there still existed a "possibility that the State [could] bolster its case with additional evidence," *id.* at 449, 451.

There is no similar possibility here. It is undisputed that the searches here were undertaken without warrants and that the ICE and CBP policies authorize warrantless cell phone searches. If the border search exception does not extend to cell phone searches—that is, if warrants are generally required to search cell phones even at the

border—then there is no question that the Court should grant summary judgment to Mr. Anibowei.

## III.   AT MINIMUM, THE COURT SHOULD ORDER THE DISTRICT COURT TO ENTER A PRELIMINARY INJUNCTION AGAINST ICE AND CBP

At minimum, the Court should grant Mr. Anibowei a preliminary injunction to protect him from future warrantless searches and prevent ICE and CBP from accessing or using his data.

In addition to showing [1] "that he is likely to succeed on the merits," which Mr. Anibowei has established, *supra* Part I, a plaintiff seeking a preliminary injunction "must establish . . . [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 536-37 (5th Cir. 2013).  When a lawsuit is against the government, the balance of equities and public interest "factors merge."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### A.    Mr. Anibowei Is Likely to Suffer Irreparable Harm in the Absence of Preliminary Relief

Mr. Anibowei faces two distinct irreparable harms in this case.  As a threshold matter, he is suffering ongoing irreparable injury because his private information and his confidential attorney-client communications are currently in the government's possession as the result of an unconstitutional search and seizure.  Additionally, Mr. Anibowei faces irreparable injury each time he travels internationally by being subject to warrantless searches of his cell phone.  Violations of constitutional rights constitute irreparable harm.  *See Elrod v. Burns*, 427 U.S. 347, 373-374 (1976); *Statharos v. N.Y. Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999); Charles A. Wright & Arthur R. Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed. 2020) ("When an alleged deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary.").  Because government agents have searched him nearly every time he has traveled internationally since 2017 there is a very real threat that Mr. Anibowei will be wronged again.  Indeed, because the government still has his data in its possession his injury is ongoing and continues today.

## B.    The Balance of Equities and Public Interest Favor a Preliminary Injunction

The balance of equities and public interest also favor a preliminary injunction in this case.  The government has no legitimate interest in enforcing unconstitutional polices.  *See United States v. U.S. Coin & Currency*, 401 U.S. 715, 726 (1971) (Brennan, J., concurring); *Legend Night Club v. Miller*, 637 F.3d 291, 302-03 (4th Cir. 2011); *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006).  And "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)).  Complying with the Constitution is no great burden on the government, and requiring a warrant before searching one man's cell phone is neither difficult to administer nor a grave risk to national security.

## CONCLUSION

The Court should reverse the decision below and direct the district court to enter summary judgment in favor of Mr. Anibowei.  At minimum, the Court should direct the district court to enter an order preliminarily enjoining Defendants from searching Mr. Anibowei's cell phone without

a warrant and preventing all access to and use of Mr. Anibowei's data pending a final decision in this case.

June 1, 2020                              Respectfully submitted,

                                         */s/ Andrew Tutt*
Mimi Marziani                            Andrew T. Tutt
Peter Steffensen                         R. Stanton Jones
TEXAS CIVIL RIGHTS PROJECT               Stephen K. Wirth
1405 Montopolis Dr.                      Samuel F. Callahan
Austin, TX 78741                         Graham W. White
(512) 474-5073                           Jayce Lane Born
(512) 474-0726 (fax)                     ARNOLD & PORTER KAYE
mimi@texascivilrightsproject.org         SCHOLER LLP
                                         601 Massachusetts Ave., NW
Hani Mirza                               Washington, DC 20001
TEXAS CIVIL RIGHTS PROJECT               (202) 942-5000
1412 Main St., Suite 608                 andrew.tutt@arnoldporter.com
Dallas, Texas 75202
(972) 333-9200 ext. 171
(972) 957-7867 (fax)
hani@texascivilrightsproject.org

*Counsel for Appellant George Anibowei*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically on June 1, 2020 and will, therefore, be served electronically upon all counsel

*/s/ Andrew Tutt*
Andrew T. Tutt

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(a) and 32(g), the undersigned counsel for appellee certifies that this brief:

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,618 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and (6) because this brief has been prepared using Microsoft Office Word and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

*/s/ Andrew Tutt*
Andrew T. Tutt